[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute. arising within a dissolution action, involves a plaintiff husband, now aged 34, and a defendant wife, now aged 31, who married in New Haven, Connecticut, on June 27, 1987.
There was one minor child of this marriage:
James E. McGann III, born August 16, 1988, now three.
It was the first marriage for each. They have both resided continuously in this state for the past twelve months. Neither is the recipient of public assistance from the State of Connecticut or of any governmental subdivision. CT Page 514
FINDINGS RE:
CUSTODY
With the exception of some brief comments involving matters set forth in the sworn financial affidavits, the sole focus of this trial was upon custodial issues. The custodial focus, in turn, was primarily upon the defendant mother and her history of drug addiction and treatment.
Their minor child was conceived while both mother and father were addicted to drugs. Young James was born in withdrawal and was hospitalized in the intensive care unit for the first six weeks of his life to deal with that problem.
Father entered into an Addiction Prevention and Treatment Program in New Haven involving the use of methadone from May of 1986 until January of 1989 and completed it successfully. He is no longer on methadone. There is no evidence that he has been involved with drugs since completion of that program, although he does testify to occasional use of beer. He has been employed at the same job for the past four years, where he has been elevated to a supervisory capacity.
Mother's drug history is more detailed and extensive:
She entered into an Addiction Prevention and Treatment Program in New Haven involving the use of methadone in May of 1986, completing it in May of 1990.
In April of 1990, she used cocaine,
A cocaine treatment group was offered to her. She declined to participate.
From July 24 through July 27 of 1990 defendant mother was treated at the Meriden-Wallingford Hospital for alcohol abuse.
On July 28 of 1990 she was transferred to Elmcrest Hospital for alcohol and Xanax detoxification and treatment, remaining in in-patient status at Elmcrest until August 30, 1990.
While in treatment at Elmcrest Hospital she was advised to avoid any intimate relationships for a year. She established, and continues to maintain to the date of trial, a close relationship with a fellow Elmcrest patient, addict and convicted felon, Gary Verdolini.
In September of 1990 the defendant mother entered into an after-care CT Page 515 program at the Meriden-Wallingford Hospital and left after four or five days.
She resumed use of Xanax in September of 1990.
In October of 1990, defendant mother entered the after care program at St. Raphael's Hospital. She used heroin once and reported herself to the staff.
She continued with the program for a few days, used heroin again and was dismissed.
Dr. Scott Casper prescribed Xanax for her from October 1990 until April of 1991.
She was placed on Buprenorphine from November 15, 1990 to April 1991.
In April of 1991, defendant mother returned to Elmcrest for four days for detoxification from Buprenorphine. Dr. Joan Green, her current psychiatrist, prescribed Xanax from April 1990 to the current time.
On November 9, 1991, defendant mother placed heroin and drug paraphernalia in her purse.
On November 19, 1991 she was arrested for possession of that heroin and drug paraphernalia, which was still in her purse.
On November 21, 1991 defendant mother submitted a urine sample for testing. Results were negative for the use of opiates from November 16, 1991.
On December 26, 1991, at the request of the attorney for the minor child, defendant mother submitted a random urine sample for testing. Results are negative for the use of opiates from December 21, 1991.
Defendant mother testified under oath that she has been drug free since her interviews with the Family Relations Counselor, approximately a year ago. Her demeanor while on the stand, her glib responses her ready excuses for her failures, her inappropriate behaviors and her justifications for those behaviors, as well as her readiness to pledge future behaviors beyond her historic reach — all of these combine to present a witness who is not credible.
The Family Relations Counselor presented an evaluation and testimony so much at odds with the court's view of the parties and the evidence, an evaluation and a style of testimony CT Page 516 weighted so implacably in favor of the mother that it raised doubts of the counselor's impartiality, and a report so dated in view of the urgent issues before the court, that her testimony was of limited use to the court.
She saw little of value in a father who began to deal with his drug addiction at the same time as the mother, who had been fully successful in achieving sobriety and who has held a responsible job for the past four years. She clearly, repeatedly, preferred the drug conflicted mother.
On cross examination, the Family Relations Counselor was more impressed with the single instance of a dirty diaper in the home of the father than the pocketbook containing heroin and a hypodermic needle carried by the mother for ten consecutive days. She was more concerned with the baby's use of a bottle, rather than a drinking glass, while with the father than she was with mother's continuing relationship with a convicted felon and drug addict, contrary to her therapist's advice.
The Family Relations report was completed on April 4, 1991, more than nine months ago. It evaluated a custodial mother with a history of repeated drug abuse who was arrested for possession of heroin and drug paraphernalia seven months after the evaluation was completed. The defendant mother does not dispute the possession, but she does offer an explanation. The mother's recent arrest, and the court's need for guidance when the issue is as solemn as drug abuse by a custodial mother, is so problematic that it renders a nine month old report, based on interviews taken almost a year ago, of limited use to a court attempting to determine the current best interests of the minor child.
Had the evaluating Counselor been more balanced and impartial in her initial report, she might have been better able to evaluate the implications of mother's later behavior and arrest. When she testified at trial, she was so committed to the conclusions in her earlier written report, she was unable to consider later developments that reflected poorly on her custodial recommendation without becoming defensive and evasive.
The court was also offered the testimony of the defendant mother's therapist, David Spaulding. Mr. Spaulding, who earned his MSW from the University of Connecticut in 1988, appeared voluntarily on behalf of his client. No subpeona was required. He spoke well, almost enthusiastically, of the defendant mother. He offered no negative implications, and permitted no negative interpretations. He was clearly an advocate, careful to do nothing to negatively impact his client's custodial quest. From Mr. Spaulding's client perspective, he did well. He protected CT Page 517 his therapeutic relationship with Debi McGann. He likely enhanced it. But his testimony was of limited use to a court in need of objective, impartial insights.
This court does not find it in the best interest of the minor child to be placed in the custody of the defendant mother until the court finds credible evidence to support her assertions that she no longer uses drugs. Her non-use should be of sufficient duration to generate reasonable confidence in her future non-use. She should demonstrate a capacity to use good judgment.
She offers a history that is worrisome. She offers testimony in explanation of that history that is not credible. She offers only one random drug test to sustain her claim to have been drug free. She also offers a consistent pattern of poor judgment. Each day of her relationship with Gary Verdolin represents an ongoing series of poor judgments since August of 1990. Her storage of heroin in her pocketbook for ten days constituted a criminal offense at the very least. That storage also made heroin available to her child, who, credible testimony suggests, enjoyed the game of rummaging through his mommy's pocketbook for candy.
It is not in the best interests of a minor child, born addicted, to be placed in the custody of a parent with limited commitments to avoiding proximity to drugs, and to people using drugs, and whose judgment is so consistently poor. This is particularly so when the available option is a father whose love for the child is not questioned by the defendant mother, a father who offers a drug free home and pocketbook and a father who offers the child care of his parents when he is at work. The suggestion that a working schedule disqualifies an otherwise appropriate parent is an unacceptable premise.
Keep in mind that this decision does not sever the mother's relationship with the young child. Mother and child will remain available to each other, as they should. Mother clearly has been the primary caretaker of the young child during his early years. Further, the mother is reminded that a year of provable drug free existence, evidenced by a pervasive pattern of drug tests or a truly random drug testing program, might be seen by later courts as a basis for modification of young James' custody. If she is able to commit herself to being drug free, being employed and to making good parental judgments, she may well find that this decision is nothing more than a minor interruption in her continuing custodial role with her son.
The father, and his competent child caring parents, are cautioned to recognize this decision for what it may well be CT Page 518 — an opportunity for the young boy's mother to reorganize her life, clear her head, restructure her patterns and eliminate drugs from her life for a meaningful period of time. When that is accomplished, if that is accomplished, defendant mother may find that a later court will return her to her role as young James' primary child care source. Father and his parents should be prepared for that. In the best of all possible worlds, a truly loving father would do all within his power to aid in that result. When healthy and clear headed, defendant mother may be a good and loving mother. Young James could be well served by her full recovery.
It might be advisable for defendant mother to buttress any future modification attempt with the evaluation and testimony of an impartial drug specialist, hired with the approval of both parents, someone professionally able to independently evaluate the partisan endorsements of the mother's therapists.
FINANCE
Plaintiff's father's net income is $439 a week. Defendant mother is not employed on a regular basis, although she testifies to working for Gary Verdolini from time to time as a waitress, for which she could earn a wage, and likely earns some tips. She reports an income of $112 a week of unemployment compensation.
Plaintiff's debts total $3153, defendant's total $5040.
There are two automobiles, both reported to be in defendant's name.
Husband has a $1000 savings account.
ORDERS:
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply:
1. CUSTODY
a. The parties shall have joint legal custody of the minor child, James E. McGann III.
b. Plaintiff father shall have primary physical custody of the minor child. CT Page 519
c. The parties shall consult on all major decisions regarding the child's health, education and welfare.
d. If the parties are unable to reach an agreement, plaintiff father's decision shall be final.
2. ACCESS
a. Defendant mother shall have reasonable rights of access to the minor which shall include, but not necessarily be limited to the following:
b. The first and third weekends of each month, from Fridays at 5 pm to Sundays at 5 pm.
c. If a holiday occurs on a Monday following any of defendant's weekends, the weekend shall extend through Monday at 5 pm.
d. Thursday and Friday of the second and fourth week of each month. from Thursday at 5 pm to Friday at 5 pm.
e. Mutually alternate or share the child's birthday, New Years' Day, Easter, July 4th, Thanksgiving, Christmas Eve and Christmas Day. Plaintiff shall establish the schedule after consultation with defendant.
f. Three non-consecutive weeks of vacation during the months of June, July or August. If circumstances generate a strong maternal preference for a vacation week during another time of the year, mother shall be entitled to such a choice providing it does not encompass father's holiday schedule, 2 e, above.
g. Father shall have Father's Day, mother shall have Mother's Day.
h. The court specifically empowers, and encourages, the parents to vary any portion of the access in any mutually agreeable manner.
3. CHILD SUPPORT
a. Because defendant has a net income less than the non-custodial parent's self-support reserve established in the Child Support Guidelines [(c) Summary of Findings (3), page 3], defendant shall make no child support payments at this time.
b. Defendant is directed to notify plaintiff immediately CT Page 520 upon finding employment, divulging all the information necessary to apply the Child Support Guidelines.
4. ALIMONY
a. Plaintiff shall pay defendant $50 a week as periodic alimony for a period of two years.
b. The two year period of payments shall be non-modifiable.
c. Whenever, during the next twelve months, defendant finds it necessary or advisable to take a drug test, plaintiff shall pay one-half the out of pocket cost to the defendant thereof as additional alimony.
d. Both the twelve month term and the amount, payment of one-half the out of pocket cost to defendant, are non-modifiable.
5. MEDICAL INSURANCE
a. Plaintiff shall provide health insurance for the benefit of the minor child.
b. Plaintiff shall be responsible for all unreimbursed medical, dental, prescription, orthodontic and mental health expenses for the physical or mental health of the child until defendant is employed, at which time the parties shall thereupon share the costs of unreimbursed expenses equally.
6. TAX EXEMPTION
a. Plaintiff will be entitled to claim the child as his tax exemption until further order of this court.
b. Defendant will sign all documents necessary to effectuate plaintiff's use of the tax exemption.
7. PERSONAL PROPERTY
Each of the parties shall retain ownership of all personal property currently within their possession.
8. ATTORNEYS FEES
a. Each of the parties shall be responsible for the payment of their own attorney's fees.
b. The court finds the bill submitted by the attorney for the minor child Bernard Christianson to be fair and CT Page 521 equitable.
c. Each of the parties is to pay one-half of Attorney Christianson's bill within 90 days hereof, after deducting sums each of them has already paid.
9. DEBTS
Each of the parties shall be responsible for the payment of those liabilities listed on their sworn financial affidavits and shall hold the other harmless therefrom.
10. ATTORNEYS' FEES
Each of the parties shall pay their own attorney's fees.
11. FURTHER NEGOTIATIONS
a. The court recognizes that the parties may have mutual preferences that have not been revealed to the court during the trial or which the court may have otherwise inadvertently thwarted.
b. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and to seek mutually acceptable variations of the court's orders.
c. Any such mutually negotiated modifications are to be submitted directly to the undersigned in written form, signed by all three counsel as well as the plaintiff and the defendant not later than thirty days after this judgment, without costs and without the need to establish a substantial change of circumstances.
d. Beyond that date, or before any other court, modifications shall be by the traditional route and must meet all the more formal requirements.
12. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of this court during the pendency of any appeal.
JOSEPH L. STEINBERG, J.